# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| STAN and RAINY WAGNER, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUMMIT AIR AMBULANCE, LLC, REACH AIR MEDICAL SERVICES, LLC, and DOES I-X,<br><br>Defendants.<br><br>REACH AIR MEDICAL SERVICES, LLC.<br><br>Counterclaim and Third Party Claim-Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHIELD OF MONTANA and STAN AND RAINY WAGNER,<br><br>Counterclaim and Third-Party Claim Defendants. | CV-17-57-BU-BMM<br><br>**ORDER** |

1

Reach Air Medical Services ("Reach") filed its Amended Third-Party Claim against Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Montana ("BCBSMT") on February 7, 2018. (Doc. 66.) Reach alleges that the course of conduct between Reach and BCBSMT gives rise to an implied-in-fact contract. BCBSMT filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on February 12, 2018. (Doc. 68.) The Court conducted a motion hearing on March 14, 2018. (Doc. 73.)

## BACKGROUND

Reach's Amended Complaint against BCBSMT arises from Reach's transportation of Stan and Rainy Wagners' minor son by fixed-wing air ambulance from Bozeman, Montana to Denver, Colorado for medical treatment. Reach operates emergency air ambulance services from several operations bases in Montana and throughout the western United States. Reach does not dispatch its air ambulances until third-party medical professionals or first responders request its emergency transport services. The law requires that Reach transport patients regardless of their ability to pay as Reach provides an emergency service. BCBSMT operates as a health insurance company that provides health coverage to its members in Montana, including the Wagners.

Reach transported the Wagners' minor son on August 27, 2015. Reach billed the Wagners for its services. The bill totaled $109,590.00. Reach subsequently

reduced the bill to $62,990.38 to correct what it claimed to have been a billing error. BCBSMT paid $22,933.00 upon receipt of the claim from Reach. BCBSMT explained that this amount reflected its obligations under the Wagners' health plan. Reach accepted this payment. Reach proceeded to seek the remaining balance of the bill from the Wagners.

The Wagners initiated an action to challenge Reach's claim regarding the outstanding balance on July 18, 2017. In response, Reach filed a counterclaim against the Wagners and a third-party claim against BCBSMT for breach of an implied contract. Reach alleges an underpayment of $40,057.38. BCBSMT seek to dismiss Reach's claim on the basis that the provision of medical services without more does not give rise to an implied contract claim between the provider and the health plan.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating a 12(b)(6) motion, the Court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Kwan v. Sanmedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)). The complaint must allege sufficient facts to state a plausible claim for relief to survive a motion

to dismiss. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). Federal courts generally view "with disfavor" Rule 12(b)(6) dismissals. *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.3d 208, 213 (9th Cir. 1957). "A case should be tried on the proofs rather than the pleadings." *Id.*

## DISCUSSION

Montana law recognizes that implied contracts are just as valid as express contracts. Mont. Code Ann. § 28-2-103. The only difference being that implied contracts come into being, and are manifested, by conduct, rather than a written contract. *Id.* Four elements must exist to establish an implied contract: (1) identifiable parties capable of contracting; (2) the parties consent; (3) a lawful object; and (4) a sufficient cause or consideration. Mont. Code Ann. § 28-2-102.

BCBSMT argues that Reach's Amended Complaint fails to support any inference that BCBSMT intended to enter into a contract with Reach. BCBSMT possessed no knowledge of Reach's transport of the Wagners' son until after the transport had taken place. Reach and BCBSMT did not discuss price, an essential term, at any time before it had provided the services.

Reach contends that implied-in-fact contracts arise from parties' course of conduct in a variety of contexts, including healthcare. The cases cited by Reach prove persuasive at this juncture. For example, the Court in *Chiron Recovery Center, LLC v. AmeriHealth Hmo of New Jersey, Inc.*, 2017 WL 4390169 at *4-5

4

(S.D. Fla. 2017), determined that Chiron stated a claim for an implied-in-fact contract sufficient to meet the Rule 12(b)(6) pleading standard.

Chiron contacted Magellan, who acted as AmeriHealth's agent regarding pre-authorization of medical treatments. *Id.* at 1. Chiron rendered substance abuse treatment to patients insured by AmeriHealth based on Magellan's authorization. AmeriHealth stopped paying Chiron. *Id.* Chiron pleaded facts sufficient to allege that an implied-in-fact contract existed regarding the understanding between the two companies: AmeriHealth's transmittal of authorization codes for treatment; the statements that the treatments were medically necessary; advice on how to expedite payment; and course of dealing, including prior payment. *Id.* at 5. Likewise, the courts in *San Joaquin General Hospital v. United Healthcare Insurance Company*, 2017 WL 1093835 at *3 (E.D. Cal. 2017), and *Queen's Medical Center v. Kaiser Foundation Health Plan, Incorporated*, 948 F. Supp. 2d 1131, 1146 (D. Haw. 2013), determined that the pleadings were sufficiently definite to plead the creation of an implied-in-fact contract sufficient to survive a motion to dismiss.

Reach's complaint, taken as true, alleges that an implied-in-fact contract exists in light of the course of dealing between Reach and BCBSMT. Reach alleges that they possess an obligation under the law to transport Wagners' son regardless of the Wagners' ability to pay. (Doc. 66 at 37.) Reach alleges that BCBSMT knew that its members may need emergency air ambulance services and

5

that Reach sometimes could be the most convenient provider. *Id.* Reach further alleges that BCBSMT did nothing to ensure that its members refrained from using Reach's services. *Id.* at 38. BCBSMT advises its members to seek emergency care for life-threatening medical conditions on its website. *Id.*

Reach additionally alleges that Reach has billed BCBSMT for the usual and customary rate on multiple occasions and that BCBSMT has paid that rate in full for other air ambulance transports that have arisen in Montana in the last five years. *Id.* at 39. Reach finally alleges that BCBSMT remained fully aware of the rates charged by Reach for its services. *Id*. at 38. The Court must construe these allegations in the light most favorable to Reach, as the nonmoving party. These allegations, taken as true, provide that an implied-in-fact contract exists between Reach and BCBSMT.

BCBSMT argues that it never consented to be bound by an implied-in-fact contract. (Doc. 68 at 10.) Montana law requires consent of the parties for a contract to exist. Mont. Code Ann. § 28-2-102. The Court must examine "whether the parties have mutually consented to a contract." *Bitterroot Int'l Sys., Ltd. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 33, 336 Mont. 145, 153 P.3d 627. This inquiry should evaluate whether a "reasonable person, based upon the objective manifestation of assent, and all the surrounding circumstances, would conclude that the parties intended to be bound by the contract." *Id.*

The Court determined in *Bitterroot* that no genuine issue of material fact existed regarding whether Western objectively manifested its intent to be bound to a contract when it sent a letter on April 25, 1996. *Id.* at ¶ 34. Bitterroot additionally manifested its intent to assent to the offer by taking actions in reliance on the letter. *Id.* at ¶ 36. Bitterroot took the following actions in reliance: Bitterroot (1) signed the April 25 letter; (2) installed computer and telecommunications equipment; (3) hired, trained, and placed a full-time employee at Western's headquarters; and (4) hauled freight for two years according to the terms and rates of a Transportation Logistics Proposal referenced in the April 25 letter. *Id.*

Reach's alleges consent through BCBMT publicly holding itself out as willing to pay for emergency air ambulance services. Reach alleges that it has transported BCBSMT members in the past years with the expectation that it would receive its usual and customary rate. (Doc. 66 at 39.) BCBSMT cannot escape the allegations of all the surrounding circumstances at this stage by arguing that it lacked knowledge of the transport of the Wagners' son until after the transportation had taken place. Reach alleges that BCBSMT reasonably knew that Reach would transport people insured by BCBSMT. BCBSMT knew generally of the charges for such a transport based on its previous dealing with Reach. *Id.* at 38. Notification after the transport does not appear to eliminate BCBSMT's ability to consent.

The Court, at this time, must take the allegations in Reach's Amended Complaint as true. These allegations potentially could support an implied-in-fact contract between Reach and BCBSMT. Reach alleges that it "fulfilled its obligations under the implied contract by providing services and supplies from which BCBSMT and the Wagners benefitted." *Id.* at 39. Reach has alleged sufficient facts to demonstrate that the parties consented and intended to enter into a contract that could be sufficiently enforceable, and, subsequently, breached.

The Court will entertain summary judgment motions upon further development of the record. A more fully developed record will allow the Court to evaluate Reach's implied contract theory in context. As noted in *Bitterroot*, courts have deemed persuasive in implied contract cases, actions taken in reliance. *Bitterroot*, and the other cases cited by Reach including *Chiron*, *San Joaquin*, and *Queen's Medical Center*, present more fully developed factual records than the case here. The development of the record will reveal the extent, if any, to which the parties' conduct ripened into an implied-in-fact contract.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that BCBSMT's Motion to Dismiss (Doc. 67) is **DENIED**.

DATED this 20th day of April, 2018.

Brian Morris
United States District Court Judge